We are on our final case of this morning, Lister v. City of Las Vegas, case number 24-3933. Each side will have 15 minutes, and as I've stated before, if appellants would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your time, and I'd like to know if you want to reserve any time. Thank you, Your Honors. May it please the Court, my name is Jermon Hicks, good morning, Your Honors. Together with my co-counsel, Noel Arriola, we represent the appellant and plaintiff, Ms. Latonya Lister. At this time, I would ask for 12 minutes initially and reserve 3 minutes for rebuttal, please. There are two essential issues presented in this case. First, did the district court err in failing to resubmit the matter to the jury or grant a new trial in light of an inconsistency in the jury's verdict? Second, is a reversal warranted due to an erroneous jury instruction and or an error in the verdict form with respect to a Title VII hostile work environment claim? We say that the answer to both of these questions, Your Honors, is yes. First, if we take a look at what happened with the verdict form, the first question that the jury was required to answer was did the plaintiff establish by a preponderance of evidence that the incident on April 7, 2019, was severe, pervasive, and objectively and subjectively offensive to a reasonable person when looking at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or mere offensive utterance, and whether it was unreasonably interfered with Ms. Lister's work performance? The jury answered in the affirmative to both of those questions, yes. Where the conflict arises, the subsequent question, question number two, do you find that the defendant discriminated against plaintiff in violation of Title VII? There, the jury said no. However, if you now go to the damages question, question number four, we find by a preponderance of the evidence that because the defendant violated Title VII, the plaintiff is entitled to the following amount of damages for pain and suffering. At that time, the jury gave a verdict of $150,000. Therein, Your Honors, lies the inconsistency. Although the judge contemplated further deliberations, she ultimately decided against it. If you look to page 42 of the records, Your Honors, and the final paragraph of our brief, after the jury exited the courtroom, the district court stated the following, I'm not going to tell you what is happening with the inconsistency at this point in case I need to summon them back for further deliberations. So even though the judge considered that it may be wise to engage in further deliberations after disclosing and discussing the inconsistency, she failed to do so. More importantly, Your Honors, there was no discussion of the inconsistency with the attorneys. So therefore, the attorneys knew that there was an inconsistent verdict, but had no knowledge of what the inconsistency was. Because the attorneys had no knowledge of what the inconsistency was, the attorneys were not allowed the opportunity to argue what would be the better approach. Could the attorneys see the verdict? The attorneys at the time did not see the verdict form. All we were told was that there was an inconsistency. The judge said this. The judge left. The judge returned to the courtroom and basically said that we have an inconsistency in the verdict. The attorneys at the time did not know the details of the level of the inconsistency. Did the attorneys ask to see the verdict? The attorneys did not ask to see the verdict. What the attorneys did was ask that the jury hopefully, the hope was that they would be brought back to deliberate further. But because the judge left the bench, went and spoke to the jurors, and then released the jurors, at that point in time, the only opportunity for the attorneys would be to brief the issues later. That is when the attorneys have the opportunity to understand the full inconsistency, ultimately brief the issues later, and then the court, instead of having a new trial, the court granted the judgment in favor of the defendant, for which point we have now appealed this case. Why did the judge's polling of the jury not cure any inconsistency? That's a good question, Judge Brown. But the problem with the question of polling is all you did then was go through the verdict form and have them already answer the questions that they had put in. What the polling did not allow was for any explanation as to why the jury had this inconsistency in the verdict. If the judge would have resubmitted and given them more guidance as to the inconsistency, then those questions could have ultimately been answered. By simply polling the jury, all you're doing is asking, is this your answer to question one? Is this your question to answer two, three, four, and so on? So the jury is not even aware that there was a problem with the verdict. They were not made aware that there was an inconsistency, and therefore they were not allowed the opportunity to resolve the inconsistency. I will also say, Your Honors, this verdict came in on a Friday evening. And I think that part of the issue was that the court did not want to hold the jurors too long as she considered what would be the next steps. The problem that the court made was that they dismissed the jury instead of having them return. If the judge would have had the jury return on that following Monday, given them some guidance regarding the inconsistency, maybe given them more instructions or even allowed further argument from the counsel, which I have seen in trial, then the jury would be able to have them answer the question as to how could they possibly find that there was hostile work environment, but in the same breath make a decision that it was not based on race or on gender. Once the jury was released without further deliberations, the correct approach would have been to order a new trial. Due to the inconsistency in verdict, by awarding a verdict of $150,000 to a plaintiff that was still employed with the City of Las Vegas, the jury found clearly that there was a Title VII violation. So the inconsistency in the verdict arose really for two reasons. First, jury instruction number 12. The jury instruction number 12 was unclear and ultimately erroneous. Second, the special verdict form was likewise confusing to the jury. Now, Plaintiff's counsel did object on the record but ultimately submitted to the court. If you look to page 22 of the rebuttal, there was an exchange between the court and counsel. The court, well, that's why when I drafted this, I was confused because I drafted this before we settled jury instructions and I had question two initially, but it was a separate hostile work environment. Counsel, Mr. Hicks, okay, I object, but will, unfortunately, it's inaudible at that point because there seems to have been an interruption by the court reporter. But clearly, the judge at this point is talking about the jury instructions and talking about the special verdict form when there was an objection made by counsel. The judge harmonized the verdict in this case in favor of the defendant without resolving the inconsistency. Her honor assumed that the jury did not intend to enter a verdict in favor of Ms. Lister, instead harmonizing in favor of the city. While we would like to argue that this verdict should be just granted to Ms. Lister in the amount of $150,000, we recognize the inconsistency and, therefore, the fair and equitable result would be to remand this case back for a new trial to clarify jury instruction number 12 and the special verdict form. Based on their answers to questions one through three, the jury should not have answered question four. So why does that, why doesn't that mean that question four was surplusage and can be ignored and then there's no inconsistency? Your honor, that would presume that question number four did not include that we have made a Title VII violation. If you look at the language of question number four, it says because we have found a Title VII violation. So, again, you have an inconsistency and you have a confusion. One side can argue, well, yeah, because they went through questions one, two, and three, they must have not seen race or gender and it must not be a Title VII violation. However, the other argument is that they went through one, two, and three, but they did find a Title VII violation and because of that, they awarded a significant amount of $150,000. So it wouldn't make sense, your honor, for them to render a verdict of $150,000, again, to a woman who was still employed at her job unless they found that the conduct was egregious and unless that they found that there was a Title VII violation. The mere fact that they were confused as to the grounds means that we can't possibly get into the heads of the jury, which is why the case should be remanded for a new trial. But didn't the polling clear up any confusion? No. Because the poll, they were polled on whether there was discrimination based on race or based on sex and they all said no. But then, your honor, right after race and gender saying no, they said yes, that they found a Title VII violation. Therein lies the conflict and therein lies the inconsistency. And so we can't just assume, as the judge did, that they did not find that there was a race or gender violation because in the next breath, they said that there was a Title VII violation. What violation of Title VII, other than race or gender, do you claim was made? The only, was race and gender. However, because they did say that they found that there was a violation based on Title VII and the entire case was about race and gender, and again, they gave a damages award, the only thing that it could have possibly resulted would have been race or gender. Again, therein lies the confusion. So you're just saying it's an inconsistent verdict? It's an absolutely inconsistent verdict and this is a situation where the judge is supposed to give them some guidance. If, your honors, the judge had told them we have a problem here, on the one hand, you're saying that it's not based on race or gender. On the other hand, you are now giving a verdict on a Title VII violation and you made an award of $150,000. If the judge did that and they go back into the jury room and make a determination it's not based on race, it's not based on gender, therefore, it's no Title VII violation, therefore, there's no award of $150,000, then we're not here with an appeal. But because there is an inconsistency, we can't just assume what the jury was thinking. We have to ask and we have to see and that was not done in this case. We asked the court to follow the reasoning and holding in the Duck case, that's Duck versus MGM Hotel, 320F3rd, 1052, 9th Circuit case, where there was an inconsistency in the verdict and the jury was still available. The court in Duck informed the jury that there was an inconsistency and asking the jury to continue deliberations. Merely having them polled only to have them repeat their answers did nothing to alleviate the confusion. Again, in this situation, if the jury was still available, they would have had the opportunity to receive further guidance. They did not. They were then dismissed. Once the jury was dismissed, now the attorneys have more information about the inconsistency in the verdict, but the jury is already gone. Which is why in our moving papers for the motion for retrial, really the only option that we had at that moment was to ask for a retrial on this case because the jury was already dismissed. Okay, in the Duke case, this court held that resubmission is the better view when the jury is still available, but in Gallick versus B&O Railroad, the Supreme Court said that the district court has a duty under the 7th Amendment to reconcile an inconsistent verdict if it can. Isn't that what the district court did in this case? No, what the district court did was harmonize the jury and just assume that what the jury was thinking, and it's not as clear as in other case precedent where it's much more clear what the jury was deciding. If, Your Honor, the jury truly did not believe that there was a Title VII violation based on either race or gender, they would not possibly have given an award of $150,000. With that, I will reserve the rest of my time for rebuttal. Thank you, Your Honor. Okay, thank you. May it please the Court, my name is Nicole Garcia, I represent the City of Las Vegas. As a threshold matter, what I want to say is that this case is characterized by the appellant's failure to object at critical stages of the proceedings. Now, yes, Ms. Lister exercised her right to jury trial. The jury found that that April 7, 2019 incident was severe and offensive, but was not motivated by discriminatory animus, and that she had not been retaliated against. Now, the court polled the jury with Ms. Lister's permission, and the jury unequivocally confirmed those fact findings. Those findings were all consistent. Now, 23 minutes passed from the time that the court first advised the parties that there was an inconsistency in the verdict until the time that the court released the jury. And even if it wasn't until the court read the verdict that the parties became aware of the inconsistency, at no point did Ms. Lister object, ask the court to send the jury back for deliberations, or ask the court to poll the jury regarding their damages award. Ms. Lister remained silent, and in fact, the court released the jury, and all Ms. Lister did was ask her counsel, ask for the date where they could submit their briefing regarding the inconsistency in the verdict. Remind me, did the trial court read the verdict and all the answers in it aloud? Yes. Yes. Trial court read it aloud, and again, Ms. Lister remained silent throughout that entire process. Now, the city is going to ask that this court affirm the trial court's decision for four reasons. First, that the jury instructions do not contain a plain error. Second, that the trial court properly exercises discretion in releasing the jury because the fact findings of the jury were consistent. Is your position that plain error is the standard rather than clear error as to the jury instruction because there was no objection made? Yes, Your Honor. Plain error would be the standard. Ms. Lister's counsel states that they did object to Instruction 12. That's incorrect. The record is clear that they did not object to Instruction 12, particularly on the basis that they've raised here in this appeal that that first element does not have the race and or sex. The objection that appellant repeatedly cites to in their brief is actually an objection about a prior case theory that the appellant was trying to pursue. Once the city made a motion for a directed verdict, then appellant was kind of forced to narrow her case theory, and so that, and then the judge introduced the verdict form and had removed the question regarding that prior case theory. That was the source of the objection. It was not that Instruction 12 is erroneous or that 9 and 12 conflict or that the verdict form should have had a stop here instruction. At no point did appellant raise any of those objections in the court below. So Instruction 12 does not meet the plain error standard. Instruction 12, the purpose of that instruction is to, per the Swinton versus Potomac case, inform the jury or help the jury decide whether they are looking at vicarious liability or negligence when it comes to the employer's liability. And the Swinton case clearly says if it is a non-immediate supervisor or a supervisor who is not empowered to commit a tangible employment action, that you look at the negligence standard. And that standard is, did the employer know and did the employer correct? I want to come back to what the plaintiff says is an inconsistency in the verdict form. And on question 4, I think if the trial court had not included because the defendant violated Title 7, I think this would be a much easier case. Then I think the damages question is definitely surplusage. But why is the inclusion of because the defendant violated Title 7, why does that not create an inconsistency in the verdict? It does create an inconsistency in the verdict. The city agrees that the verdict is inconsistent. However, this is a point of difficulty for the trial court, whether a general verdict with interrogatories or a special verdict, generally the courts favor the inconsistency being reconciled and are harmonized. And in fact, in the Zane case, in this circuit, what the court said was if there is a conflict between the damages finding, the liability finding, which the court there called a subsidiary legal conclusion, and the fact findings, that the court can conform the liability finding to match the fact findings. And that is what the court did here. So yes, that language perhaps creates that inconsistency, but the court was well within its discretion to reconcile because the fact findings themselves, in fact in Zane the court said only fact findings create, only a conflict in fact findings create an inconsistency that is fatal. Furthermore, the courts have been clear that the burden to prove that an inconsistency is fatal. How do you characterize this as a general or special verdict? That is a difficult question. The trial court had trouble with it as well, Your Honor. I will say that in the record, the trial court called it a special verdict and the appellant called it a special verdict as well. But it is difficult to say whether. The point is that whether a general verdict of interrogatories or a special verdict, the result is the same. With a general verdict of interrogatories, FRCP 49B gives the court wide discretion. The court can have the jury re-deliberate, but the court can also harmonize the answers to match the written interrogatory responses. And that is what the court did here. And again, if a special verdict, then the court was able to harmonize or conform the liability finding to the fact findings. So just going back to jury instruction 12, that instruction does meet the negligence standards set forth in Swinton v. Potomac. Again, there is no conflict between instruction 9 and instruction 12 either, as Ms. Lister raised in her briefs. The purpose of instruction 9 is to help the jury determine whether a hostile work environment exists at all in the first place. And that instruction models the law in Harrison and other cases. And a very prominent element is whether or not it was race and or sex-based, the behavior, whether it was unwelcome, whether it was severe or pervasive. And in this case, the trial judge even went so far as to grant Ms. Lister's request that the reasonableness standard was that of a reasonable black woman. Now, once the jury under instruction 9 makes that determination whether or not there is a hostile work environment, then they can move to instruction 12 and determine whether or not the employer was negligent in correcting that behavior. And so the instructions are really meant to be read together, and there is no conflict in them. Now, even if this court were to find that instruction 12 contained error, it did not substantially harm Ms. Lister's rights. There's plenty of evidence in the record that while the April 7, 2019 incident, often referred to as the dog taunt, was in poor taste and it was offensive, that it wasn't motivated by malice or discriminatory animus. You have testimony from Captain Beniman, the alleged harasser, testimony from Captain Thompson, both testifying about the fact that Captain Beniman tried repeatedly to apologize to Ms. Lister, to try to smooth things over with Ms. Lister, had no issues with Ms. Lister. And you have other testimony from Captain Cheese and Gabe Flores, which undercut Ms. Lister's claims. So even if instruction 12, element 1, had the words race and or sex in it, the jury nonetheless would have still found that the April 7 incident, again, offensive, severe, but not motivated by discriminatory animus. You and the district court lean very heavily on the Freeman versus Chicago Park district case out of the 7th Circuit because the facts are very similar. But the Freeman court did not conclude that the damages award was surplusage, but the 9th Circuit case, Floyd versus Laws, did. How do you reconcile those two? Or is it a distinction without a difference? Well, I would say a distinction without a difference. The city did put forward before the trial court that the verdict, answer to question 4, was surplusage and should have been rejected. The trial court did not accept that explanation because there was no stop here instruction on the verdict form. But the city still argues that the verdict form instructed the jury to move on to the question 4 if their answer to the prior question was yes. The jury disregarded that and answered the question anyway. So the city still argues that the Floyd rule could apply here and it could be surplusage. Alternatively, the city does believe that the Freeman case is also instructive. And in the Freeman case, it was very similar to this case where they found, yes, the plaintiff suffered from harassment, but that harassment was not based on race or sex discrimination. And the jury wanted to compensate the plaintiff for that harassment, but that they didn't find a legal basis to do so. It's difficult, though, because question number 4 specifically says that they find a violation of title 7. Yes, Your Honor, it does say that. However... However what? That's inconsistent. Yes, but if it's a special verdict, then the court can, really in a special verdict, the trial court is there to make those findings of law and the jury is there to make the findings of fact. So the court can conform that finding to the findings of fact. I gotcha. Yeah. And again, if it's a general verdict with interrogatories, again, the court can harmonize the answers to the written interrogatories. Now, the city also argues that the court did not abuse its discretion in releasing the jury. Again, the parties agreed to pull the jury. At no point did Ms. Lister object and ask the court to have the jury engage in further deliberations. At no point did Ms. Lister object to the pulling of the jury or even ask the court to pull the jury regarding the damages question. Ms. Lister remained silent. And really, the city argues, waived her objections now at this point. Regardless, because of the fact that the court had pulled the jury and had the jury confirm no discrimination and no retaliation, in other words, no violation of Title VII, it leads to the logical conclusion that further deliberation may have been futile. And so the court properly exercised its discretion in releasing the jury. Finally, the city argues that Ms. Lister waived any objections to the special verdict form. Ms. Lister, again, that objection that Ms. Lister's counsel points to, was not related to the lack of a stop here instruction, nor was the objection related to a conflict with jury instructions. Again, it was an objection to the removal of a question that would have allowed Ms. Lister to argue an alternate theory of the hostile work environment and retaliation claim. This court in Yeti by Mali has found that when a party fails to raise an objection to a special verdict form prior to the release of the jury, that that objection is waived. And in this case, Ms. Lister sat on her rights and failed to object, so the city argues that it's waived. So ultimately, Your Honors, the city argues that the jury instructions do not contain a plain error. The trial court was properly within its discretion to release the jury, that Duke does not stand for the proposition that it is mandatory that the court has to send the jury back to deliberate. That's merely one of the options within the court's broad discretion. And that the court was correct in determining that whether a general verdict within derogatories or a special verdict, either way, the verdict form could be harmonized and that that was permissible under the law and, in fact, preferable under the Gallick case. And finally, Ms. Lister has failed to object at every step in the court below, and so her objections as to the special verdict form should be disregarded. And I'm happy to answer any other questions. We don't have any. Thank you, counsel. Go ahead and have a seat. Thank you very much.  If the verdict was read aloud, why wasn't it not incumbent upon plaintiff's counsel to ask the judge right then to keep the jury around? Your Honors, so we're clear because Ms. Simpson has the timeline wrong. When the jury was brought back in, they were asked to poll. Again, the attorneys don't know what the inconsistency is at that moment. They are polled, they then answer each question, and then they are dismissed. So because they are dismissed, the only thing counsel can do at that time is ask to file a motion for new trial because once they're gone, you can't have them then sent back to do further deliberations, which is why we're saying that's one of the critical mistakes that the judge made in this case. If the judge would have held them, given the attorneys the opportunity to argue about the inconsistency and what would be the right decision, she could have brought the jury back on that Monday or kept them over that Friday and then resolved the inconsistency and allowed them to further deliberate. But she dismissed them. So once they were already dismissed, counsel, now knowing for the first time what the details of the inconsistency are, had no other choice but to ask for further briefing, which is what we did, Your Honor, requesting a new trial. It seems that Ms. Simpson has conceded that there is an inconsistency in the verdict. So the only issue really for the court to decide is what should the judge have done or did the judge go about it the right way. Judge Beyer, you were asking about plain error. So that's correct. Even if you assume that we didn't object, and I disagree with the assertion that we didn't based on the rebuttal, page 22, but even if you assume that we didn't object, there is plain error with the jury instruction, number 12, and plain error with the special verdict form. As to juror instruction number 12, the initial paragraph discusses race and gender. When you get to the second paragraph and it talks about the two elements, they do not mention race or gender. Finally, at the end of the paragraph of that instruction, it says if you find in the affirmative two, question number one and question number two or elements number one and elements number two, you must find in favor of the plaintiff. That is what the jury did. So that jury instruction alone, because it did not include race and gender in the elements of one and two, caused the inconsistency and caused the confusion. As to the special verdict form, we've already discussed this. If the language in jury question number four had stated this. Where in the record did you object to the error that you now claim in instruction number 12? Well, Your Honor, page 22 of the rebuttal is where there's an exchange between the court and counsel. The problem is the court reporter interjected, so they don't have the entire portion of the objection. But it is clear when you read that we were talking about not just juror instruction number 12, like counsel tried to state. We were talking about the entire jury instructions as a whole, as well as the special verdict form, and then there was an objection. In addition to where you adequately objected to the jury instruction number 12? The only objection that's in the record as it relates to the instruction, Your Honor, is page 22 in the rebuttal. And like I said, unfortunately, the court reporter interjected and didn't put the full exchange. And with that, Your Honor, I say my time is up, and I thank you for your time. Thank you, counsel. And thank you, everyone. This concludes our arguments for this morning. We want to thank again counsel and our court staff for their assistance today. And the court will now stand in recess.
judges: BEA, ALBA, Brown